IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELICA and LLOYD DIAS, individually and on behalf of LUKE DIAS, <br><br>Plaintiffs <br><br>vs. <br><br>SOARING EAGLE ACADEMY, SETH HARKINS, LINDA CERVENKA, MICHELE RICAMATO and WARREN TOWNSHIP SCHOOL DISTRICT # 121 <br><br>Defendants | Case No.: |

## VERIFIED COMPLAINT

Now come the plaintiffs, by and through their attorney, Steven Glink and complaining against the defendant, and state as follows:

### PRELIMINARY STATEMENT OF THE CASE

This is a lawsuit for civil rights violations and personal injuries suffered by all plaintiffs as a result of the defendants' intentional misrepresentation and/or suppression of anecdotal information about Luke Dias' behaviors in a special education placement. This lawsuit is brought under the authority of 42 USC 1983 and *McCormick v. Waukegan School District # 60*, 374 F3d 564 (7th Cir., 2004).

### THE PARTIES

1. Soaring Eagle Academy (SEA) is a private alternative day school located in Burr Ridge, Illinois.

2. On information and belief, SEA is a facility approved by the Illinois State Board of Education for placement of special education students.

3. On information and belief, SEA is a recipient of federal and state funds.

4. At all times relevant to this complaint, Seth Harkins was the program director of SEA.

5. At all times relevant to this complaint, Linda Cervenka and Michele Ricamato were program supervisors/employees at SEA and assigned to provide services to Luke Dias.

6. At all times relevant to this complaint, Peg Merar was the director of special education for Warren Township School District # 121.

7. At all times relevant to this complaint, Angelica and Lloyd Dias are/were Luke Dias' biological parents.

8. At all times relevant to this complaint, Luke Dias, DOB 12/15/94 and his parents were residents of Lake County, Illinois.

9. At all times relevant to this complaint, Luke Dias was enrolled as a student at Warren Township School District # 121 ("the district") and was eligible for special education under the Individuals with Disabilities Education Act (IDEA), 20 USC 1400, et seq.

10. At all times relevant to this complaint, the district was a local governmental entity created and operated pursuant to various laws of the State of Illinois, including but not limited to the Illinois School Code.

11. The district's principal place of business is located in Lake County, Illinois.

## JURISDICTION AND VENUE

12. Jurisdiction is proper under 28 USC 1331.

13. Venue is proper under 28 USC 1392.

## FACTS COMMON TO ALL COUNTS

14. Luke has had several diagnostic evaluations, all of which have confirmed that Luke has a severe case of autism.

15. Pursuant to the IDEA, 20 USC 1400 et seq. the district had the legal duty to provide Luke with a free appropriate public education that would meet his educational needs.

16. Pursuant to the IDEA, the district also had a duty to provide factual information to Luke's parents in order to allow them to make appropriate decisions regarding Luke's educational placement.

17. Although Luke is over 18 years- old but has transferred his rights to make his educational decisions to his parents.

18. In addition, the parents have been appointed as Luke's legal guardians because Luke is unable to make appropriate decisions for himself (a copy of the guardianship order is attached hereto as exhibit A).

19. In 2011, the parents filed a request for a due process hearing with the Illinois State Board of Education to contest the validity of the district's placement decision. At that time, Luke was 16 years old.

20. On or about November 15, 2011, the parents and the district entered into a settlement agreement to resolve the dispute (a copy of said agreement is attached hereto as exhibit B) wherein the district agreed to fund Luke's educational placement at an ISBE approved private facility until Luke reached age 22 (see # 2 of the agreement).

21. Pursuant to the agreement, Luke was to be placed at Soaring Eagle Academy (SEA) at the district' expense.

22. Prior to entering into the settlement agreement, the parents met with various personnel from SEA to ensure that SEA was appropriate to meet Luke's educational needs.

23. Personnel from SEA assured the parents that SEA was able to meet Luke's educational needs.

24. Relying on the representations of SEA the parents consented to placement at SEA for Luke.

25. Shortly after obtaining parental consent, pursuant to the agreement, Luke was placed at SEA by the district for educational purposes.

26. As early as the IEP meeting of Feb 24, 2012, the parents noticed an increase in Luke's "dysregulation" type behaviors at home. For example, Luke started new behaviors of bolting and fleeing. Other behaviors such as hostility, aggression, agitated and out of control actions were increasing. Luke also engaged in self-injurious types of behaviors, and experienced nose-bleeds for the first time in his life because of self injurious behaviors.

27. At the time that Luke started his placement at SEA when Luke acted out at home, the parents would inform SEA of these behaviors.

28. On several occasions after experiencing an incident at home with Luke, the parents would question SEA staff, including but not limited to Harkins, Cervenka and Ricamato about their experiences/observations of Luke while he was in attendance at SEA. In response to the parents' inquiries, SEA staff informed parents that, other than minor sporadic behaviors at SEA there were no behavioral problems with Luke. The parents were also told by SEA staff that Luke was doing great at SEA, and on most occasions, used the word "amazing" to describe Luke's progress.

29. From time to time, professionals hired by Luke's parents and the parents themselves performed observations of Luke while he was attending SEA. When concerns were expressed at observing acts of inappropriate behavior/dysregulation, both professionals

and parents were told by SEA staff that Luke's behavior during the independent/parental observations were highly atypical and he was doing great.

30. During the same time period, the parents attended meetings with the SEA staff as well as staff from the district. At each of these meetings, the parents were informed by all defendants that Luke's educational needs were being met; that his behaviors were appropriate and that his Individual Education Plan ("IEP") was being successfully implemented.

31. In July, 2013, was "suspended" from SEA. SEA staff informed the parents that the reason for Luke's suspension was that Luke's inappropriate behaviors at SEA on July 9, 2013, had become so severe that he was harming himself and others (a copy of the letter from SEA is attached hereto as exhibit C).

32. At the time of Luke's suspension, the SEA staff, including Harkins, Cervenka and Ricamato also informed the parents that they could no longer handle Luke and that was why they suspended him.

33. SEA provisionally agreed to take Luke back only after a psychiatric evaluation. However, due to Luke's impairment as well as the escalation of his condition, it was impossible for the parents to obtain a psychiatric evaluation. When the psychiatric evaluation was not completed, SEA unilaterally terminated Luke's placement.

34. During Luke's entire placement at SEA, parents had requested from the individual defendants specific data about Luke's behaviors and educational progress from SEA and the district. However, neither specific data nor records responsive to the parents' requests was provided by the defendants.

35. On or about August, 2012, in retaliation for parents' inquiries and complaints about Luke's placement at SEA, the parents were prohibited from communicating directly with

SEA staff (other than, later, with the social worker). Parents were only allowed to communicate with Seth Harkins, Program Director.

36. The parents repeatedly requested that the individual defendants provide the parents with therapy notes. Instead of complying with this parental request, defendants provided only a weekly summary that was written and sent by the Program Director. That summary excluded specific, critical data.

37. Additionally, when Luke got into the state of even more trauma at SEA, these weekly summaries were unilaterally discontinued without explanation.

38. Upon being notified of Luke's suspension, the parents immediately requested any and all student records from both SEA and the district. Both SEA (Harkins) and the district refused to provide the complete set of Luke's student records at first. Only after insistence, repeated requests and citing Luke's trauma was some initial data provided.

39. Thereafter, upon additional repeated requests, the district and/or SEA provided some additional data in batches, one or two months after parents made their request. However, not all of Luke's student records were provided eight months later (March, 2014) at which time, additional critical data was discovered by parents.

40. This newly disclosed information was critical in determining the cause of this behavior that was so highly unusual for Luke.

41. As of the date that this lawsuit was filed, the complete educational record has still not been given to parents.

42. Only after Luke was in a state of severe trauma, including physical and emotional crisis, and suspended from school, were the parents were able to obtain most of Luke's student records.

43. Upon inspection of their son's records, the parents were shocked to discover that Luke's school records revealed that SEA was not following Luke's IEP; were not following

Luke's behavior plan and that Luke's behaviors at SEA had become extremely violent for months prior to his suspension.

44. The parents also learned that Luke had attempted to injure himself several times at SEA. The parents only learned after March 17, 2014 that Luke had stated thoughts of suicide to SEA staff in May, 2013.

45. The IDEA has a fee shifting provision that allows the parents to recoup their reasonable attorney's fees if they are declared to be the prevailing parties.

## COUNT I-VIOLATION OF FEDERAL CIVIL RIGHTS

46. In summary, 42 USC 1983 provides that any person acting under color of law who deprives an individual of any right guaranteed by law may be liable to that person in damages.

47. Under the IDEA, the Illinois School Code and the Illinois Student School Records Act, the parents had an absolute right to unfettered access to Luke's school records. They also had a right to truthful and accurate information about Luke's behaviors while in placement at SEA.

48. All defendants knowingly and intentionally conspired to deprive the plaintiffs of their rights to:
    - inspect and/or copy all of Luke's school records at SEA;
    - complete and accurate information about Luke's behaviors/ misbehaviors while in placement at SEA;
    - Comply with Luke's IEP and/or behavior intervention plan;
    - Provide Luke with an appropriate educational placement.

49. All plaintiffs also had the right to due process and equal protection under the Fourteenth Amendment to the Federal Constitution.

50. All plaintiffs were denied their rights to substantive and procedural due process in that:

- Defendants should have convened IEP meetings to discuss these issues but did not do so;
- The parents were unaware of the necessity to exercise their right to request an IEP meeting to discuss these issues;
- Defendants' misconduct shocks the conscious.

51. Plaintiffs were also denied the rights to equal protection under the law as on information and belief, plaintiffs were not treated similarly to other students and parents placed at SEA via the IDEA.

52. As a direct and proximate result of defendants' misconduct, Luke's behaviors spiraled out of control to the point where he was discharged from his placement at SEA. Luke also inflicted physical injury upon himself and his parents because his condition became so exacerbated by the defendants' misconduct (i.e., defendants suppressed vital information from the parents that, if known, would have caused the parents to seek an appropriate educational placement for Luke and/or compliance with the IEP / BIP).

WHEREFORE, plaintiffs respectfully pray that this Honorable Court enter a judgment in their favor and against the defendants, jointly and severally, in the amount of $250,000.00 plus costs and reasonable attorney's fees.

## COUNT II-BREACH OF CONTRACT

53. Plaintiffs reallege and incorporate by reference all of the allegations contained in paragraphs 1-45 above as their allegations for this count.

54. Since Luke's suspension to the present, the district has failed to provide a free appropriate educational placement for Luke as required by law and by the agreement.

55. Nor has the district provided any funding for an appropriate educational placement or educational/related services while Luke has been suspended/ discharged from SEA.

56. As a direct and proximate cause of the district's failure to comply with the terms of the settlement agreement, the plaintiffs have been forced to spend their money to provide educational and related to services for Luke.

Wherefore, plaintiffs respectfully pray that this Honorable Court enter judgment against the defendant school district in the amount of $125,000.00 plus all legally reimbursable expenses, the costs of filing this suit and reasonable attorney's fees.

## COUNT III-NEGLIGENCE

57. Plaintiffs reallege and incorporate by reference their allegations contained in paragraphs 1-45 above as their allegations for this count.

58. SEA and their employees (Harkins, Cervenka and Ricamato) defendants had a duty to honestly and completely inform the parents about Luke's performance and/or behaviors while in attendance at SEA.

59. In violation of that duty, the defendants carelessly and negligently:
    - failed to inform the parents that Luke's conduct at SEA was very negative;
    - failed to inform the parents that he was physically and aggressive while at SEA;
    - failed to inform the parents that SEA was not implementing Luke's behavior plan;
    - failed to inform the parents that Luke's behavior plan was ineffective;
    - failed to inform the parents that Luke expressed the desire to kill himself to SEA staff;
    - failed to inform the parents that Luke committed self-injurious behaviors at SEA such as smashing his head into a wall;
    - Failed to inform the parents that Luke's negative behaviors were increasing while he was in attendance at SEA.

60. Both defendants had actual or constructive knowledge of Luke's conduct while at SEA.

61. As a direct and proximate result of the defendants' negligent conduct, Luke and his parents suffered severe personal physical injuries.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court enter a judgment in their favor and against the defendants, jointly and severally in an amount in excess of $50,000.00 plus costs.

## COUNT IV-CONSUMER FRAUD ACT

62. Plaintiffs reallege and incorporate by reference their allegations contained in paragraphs 1-45 and 58-61 above as their allegations for this count.

63. This count is brought under the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

64. Plaintiffs are consumers as defined by section 1 (e) of the Act.

65. SEA is a person as defined by section 1 (c) of the Act.

66. SEA's provision of educational services is merchandise as defined by section 1 (b) of the Act.

67. SEA engaged in trade or commerce as defined in section 1 (f) of the Act.

68. SEA engaged in deceptive practices as defined in section 2 of the Act by making material misrepresentations of fact to the plaintiffs, including but not limited to:
   - SEA's ability to meet Luke's educational needs;
   - misrepresenting Luke's behavior's as positive when they were really negative;
   - failed to inform the parents that Luke said he wanted to kill himself while at SEA;
   - Telling the parents that Luke's mental state was appropriate while at SEA when in truth it was not.

69. SEA further engaged in deceptive practices toward the plaintiff by intentionally failing to disclose to the parents all of the dysregulation/behavior problems that Luke was having at SEA.

70. Plaintiffs relied on SEA's representations of their ability to meet Luke's educational needs in selecting SEA as an educational placement for Luke.

71. Plaintiffs further relied on SEA's representations of Luke's progress/ behaviors or lack of problems in deciding to continue Luke's placement at SEA.

72. SEA knew or should have known that plaintiffs would rely on their representations.

73. SEA's false representations and/or failure to disclose truthful factual information was made for the purpose of retaining Luke in their placement so SEA could profit financially.

74. As a direct and proximate result of SEA's intentional misstatements of fact and/or intentional concealment of material facts, Luke and his parents sustained personal physical injuries in that:
    - Luke engaged in self-injurious behaviors such as smashing his head against the wall;
    - Luke ran into a zone of danger;
    - Luke engaged in self-injurious behaviors and pulled out his IV for the first time in over approximately 7 years of receiving his regular monthly medical infusion for his compromised immune system, and was unable to receive this monthly treatment for the subsequent 4 months, jeopardizing his medical condition.
    - Luke assaulted and battered his parents who were trying to control Luke's behavioral outbursts;
    - All plaintiffs suffered severe emotional distress.

75. As a result of the above behaviors, plaintiffs were required to obtain medical treatment as well as mental health counseling.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court enter a judgment in their favor and against Soaring Eagle Academy in an amount in excess of $125,000.00 plus any enhancement of damages, costs and attorney's fees as authorized by statute.

## COUNT V-COMMON LAW FRAUD

76. Plaintiffs reallege and incorporate by reference all of their allegations contained in paragraphs 1-45 and 58-75 as their allegations for this count.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court enter a judgment in their favor and against Soaring Eagle Academy in an amount in excess of $125,000.00 plus costs.

## COUNT VI-LOSS OF CONSORTIUM

77. Plaintiffs reallege and incorporate by reference their allegations in paragraphs 1-45 and 58-75 above as their allegations for this count.

78. Both defendants knew that Luke's inappropriate behaviors at SEA had increased significantly to the point where Luke was suspended from SEA.

79. Both defendants had a duty to disclose all factual information related to Luke's behaviors to the parents.

80. Defendants breached that duty by intentionally suppressing truthful information about Luke's inappropriate behaviors.

81. As a direct and proximate result of defendants' misconduct, Luke sustained physical injuries as well as severe psychological problems, including but not limited to bolting across major intersections the streets in Gurnee on October 4, 2013, that resulted in being restrained for his own safety by the police and suffering further multiple physical and emotional injury; on July 27, 2013, pulling out his IV for the first time in over approximately 7 years of receiving his regular monthly medical infusion for his

compromised immune system, and was unable to receive this monthly treatment for the subsequent 4 months, jeopardizing his medical condition.

82. The consequences of Luke's increased inappropriate behaviors have caused the parents enormous emotional distress and they have been deprived of their normal relationship with Luke.

83. The parents have also sustained physical and emotional injuries owing to Luke's injuring them and emotional dysregulation.

Wherefore, plaintiffs respectfully pray that this Honorable Court enter a judgment in their favor against both defendants, jointly and severally, in an amount in excess of $125,000.00 plus costs.

## COUNT VII-ILLINOIS STUDENT SCHOOL RECORDS ACT

84. This count is brought pursuant to the Illinois Student School Records Act, 105 ILCS 10/1 et seq.

85. Under the ISSRA, the plaintiffs had an absolute right to inspect and/or copy their son's student records.

86. On several occasions, while Luke was in attendance at SEA, plaintiffs requested the opportunity to inspect, copy and/or receive copies of Luke's complete student records.

87. The ISSRA required the defendants to honor plaintiffs' request to inspect or copy Luke's records within 15 days of the plaintiffs' request.

88. Both defendants denied the plaintiffs their right to inspect, copy and/or to obtain all of Luke's complete student records for over eight months.

89. As of the date that this lawsuit was filed, the defendants have still not provided the parents with Luke's complete student records.

90. Section 9 of the ISSRA authorizes an aggrieved party to bring a private action against the defendants for violation of the ISSRA.

Wherefore, plaintiffs respectfully pray that this Honorable Court enter judgment in their favor and against both defendants, jointly and severally in an amount in excess of $125,000.00 plus costs and reasonable attorney's fees.

## COUNT VIII-FAMILY EXPENSE ACT

91. This count is brought pursuant to 750 ILCS 65/15, known as the Family Expense Act.

92. Plaintiffs reallege their allegations in paragraphs 1-45 and 58-75 as their allegations in this count.

93. Defendants had a duty to provide the plaintiffs with true and accurate information regarding Luke's behaviors and progress while he was in placement at SEA.

94. In violation of those duties, defendants knowingly, wilfully and wantonly provided the plaintiffs with false information about Luke's behaviors and progress while enrolled at SEA.

95. In addition, defendants knowingly, wilfully and wantonly concealed important factual information from the parents regarding Luke's behaviors and progress while enrolled at SEA.

96. As a direct and proximate result of defendants' actions, Luke suffered physical and emotional injuries.

97. As a direct and proximate result of Luke's physical and emotional injuries, the parents incurred various medical expenses for care and treatment of Luke for which they are legally responsible under the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, plaintiffs respectfully pray that this Court enter a judgment against both defendants, jointly and severally in an amount in excess of $50,000.00.

Respectfully submitted,

s/ Steven Glink
Steven E. Glink

Law Offices of Steven E. Glink ARDC # 6180869
Attorney for Plaintiffs
3338 Commercial Avenue
Northbrook, Illinois 60062
847/480-7749 (voice)
847/480-9501 (facsimile)

## CERTIFICATION

We, Angelica Dias and Lloyd Dias, having been duly sworn on oath, and subject to the penalties of perjury provided by law, do solemnly swear or affirm that we have read the foregoing Verified Complaint and state that, to the best of our knowledge, the information contained therein is true and correct.

_____
Angelica Dias

_____
Lloyd Dias

Signed and sworn before me this 7th Day of June, 2014.

_____
Notary Public

OFFICIAL SEAL
BAREEDA KHAN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires January 19, 2015